UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| FOREMOST INSURANCE COMPANY GRAND RAPIDS, MICHIGAN,<br><br>     Plaintiff,<br><br>  v.<br><br>MICHAEL B. STEELE<br>and<br>SARAH BROWN<br>and<br>KEVIN LEE PRICE,<br><br>     Defendants. | CIVIL ACTION NO. 3:24-CV-00684<br><br>(MEHALCHICK, J.) |

**MEMORANDUM**

Plaintiff Foremost Insurance Company, Grand Rapids, Michigan ("Foremost") initiated this lawsuit on April 22, 2024, by filing a complaint ("Complaint") against Michael B. Steele ("Steele"), Sarah Brown ("Brown"), and Kevin Lee Price ("Price") (collectively, "Defendants"). (Doc. 1). Foremost seeks relief in the form of a declaration that (1) it owes no insurance coverage to Steele and has no duty to defend or indemnify Steele in an underlying tort action and (2) defense counsel that Foremost has assigned to Steele in the underlying action may withdraw his appearance. (Doc. 1, at 14). Presently before the Court is Foremost's motion for judgment on the pleadings. (Doc. 37). For the following reasons, the motion shall be **GRANTED**. (Doc. 37).

I. **BACKGROUND AND PROCEDURAL HISTORY**

The following factual summary is taken from Foremost's Complaint. (Doc. 1). There is one other lawsuit ("Brown Litigation") relevant to this matter that implicate Foremost's interests as an insurer. (Doc. 1, at 7-12). The Brown Litigation involves Steele, Brown, and

Price. (Doc. 1, at 7). On October 5, 2023, Brown filed a complaint ("Brown Complaint") in the Court of Common Pleas of Luzerne County against Price and Steele asserting claims of negligence and negligence per se. (Doc. 1, ¶¶ 15-17). On January 17, 2024, Brown filed an Amended Complaint ("Brown Amended Complaint"). (Doc. 1, ¶ 16). Brown alleges that on August 6, 2023, she was outside of her residence at 65 Barney St. in Larksville, PA. (Doc. 1, at 7-8). At the same time, Price was outside of the property he rents from Steele, located at 71 Barney St. in Larksville, PA with his dog Miami ("Miami"). (Doc. 1, at 7-8). Without provocation, Miami suddenly got loose and attacked Brown, causing her injuries. (Doc. 1, at 8). Brown alleges that on December 13, 2022, Miami previously got loose and bit two children and thus has a history of attacking humans without provocation. (Doc. 1, at 9). Price also posts "Beware of Dog" signs on his property. (Doc. 1, at 9). Brown additionally contends that Steele knew that Miami was dangerous because when Steele collects rent from Price, he does not enter the residence due to the danger of Miami's presence. (Doc. 1, at 9). According to Brown, both Steele and Price "realized the risk that the dangerous dog, Miami posed to society and acted in conscious disregard or reckless indifference to that danger" by failing to properly secure the dog and/or allowing the dog to remain on the subject property. (Doc. 1, at 9). After the incident, the Larksville police cited Price for violations of the Pennsylvania Dog Law and Larksville Borough Ordinances. (Doc. 1, at 8).

Foremost insured Steele under the Dwelling Fire One Policy Vacant or Unoccupied, policy number 381-0091679411-07 (the "Foremost policy"). (Doc. 1, ¶ 11). Under the Foremost policy, Foremost is required to insure Steele for accidents, including bodily injuries to other persons and medical costs related thereto as well as property damage, at covered premises. (Doc. 1, ¶ 14). One such covered premise is 71 Barney St. in Larksville, PA, the

property that Defendant Price rented from Defendant Steele when the incident leading to the Brown Litigation occurred. (Doc. 1, ¶¶ 13, 18). The Foremost policy includes premises liability limits of $100,000 per accident and medical payment limits of $500 per person. (Doc. 1, ¶ 13). The Foremost policy also includes certain exclusions. (Doc. 1, at 6). For example, the Foremost policy explicitly excludes coverage for bodily injury that results from the actions of (1) any animal which the insured (or the insured's family member or employee) is aware has a prior history of biting or attacking humans or other animals or (2) any dog that is deemed dangerous as defined by Pennsylvania Public Law 784, as amended. (Doc. 1, at 6).

On April 22, 2024, Foremost filed its Complaint for Declaratory Judgment pursuant to the Declaratory Judgment Act, 28 USC § 2201 ("DJA"), asking this Court declare that Foremost has no duty to cover, indemnify, or defend Steele in the related state court proceedings and that Foremost is entitled to cease providing Steele representation in the Brown Litigation. (Doc. 1, at 14). On July 15, 2025, Foremost filed its motions for entry of default judgment against Price and Steele, respectively. (Doc. 18; Doc. 19). On June 16, 2025, the Court granted Foremost's motions for entry of default judgment. (Doc. 36). On July 15, 2025, Foremost filed the instant motion for judgment on the pleadings and brief in support. (Doc. 37; Doc. 38). Brown filed a response and brief in opposition to Foremost's motion for judgment on the pleadings on August 4, 2025. (Doc. 42; Doc. 43). Foremost filed a reply brief in support of its motion for judgment on the pleadings on August 18, 2025. (Doc. 45). Accordingly, the motion is fully briefed and ripe for disposition.

II.     S<small>TANDARD OF</small> R<small>EVIEW</small>

A motion for judgment on the pleadings is governed by Rule 12(c) of the Federal Rules of Civil Procedure, which provides that "[a]fter the pleadings are closed—but early enough

not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). "Granting a 12(c) motion results in a determination on the merits at an early stage in the litigation," and thus, the movant is required "'to clearly establish [ ] that no material issue of fact remains to be resolved and that he is entitled to judgment as a matter of law.'" *Inst. for Scientific Info., Inc. v. Gordon & Breach, Sci. Publishers, Inc.*, 931 F.2d 1002, 1005 (3d Cir. 1991) (quoting *Jablonski v. Pan Am. World Airways, Inc.*, 863 F.2d 289, 290-91 (3d Cir. 1988)). A Rule 12(c) motion is analyzed under the same standards that apply to a Rule 12(b)(6) motion to dismiss, construing all allegations and inferences in the light most favorable to the nonmoving party. *Wolfington v. Reconstructive Orthopedic Assocs. II PC*, 935 F.3d 187, 195 (3d Cir. 2019); Thus, to survive a 12(c) motion, the complaint must contain sufficient factual matter to show that the claim is facially plausible, enabling the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Warren Gen. Hosp. v. Amgen Inc.*, 643 F.3d 77, 84 (3d Cir. 2011) (quoting *Fowler v. UPMC Shadyside,* 578 F.3d 203, 210 (3d Cir. 2009)).

"In considering a motion for judgment on the pleadings, a court must accept all of the allegations in the pleadings of the party against whom the motion is addressed as true and draw all reasonable inferences in favor of the non-moving party." *Zimmerman v. Corbett*, 873 F.3d 414, 417-18 (3d Cir. 2017) (citing *Allah v. Al–Hafeez,* 226 F.3d 247, 249 (3d Cir. 2000)). When adjudicating a motion for judgment on the pleadings, the court should generally consider only those allegations contained in the complaint, as well as "documents that are attached to or submitted with the complaint, . . . and any matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, [and] items appearing in the record of the case." *Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006); *see Atiyeh v. Nat'l Fire Ins. Co. of Hartford,* 742 F. Supp. 2d 591, 595 (E.D. Pa.

4

2010) (court may consider "the pleadings and attached exhibits, undisputedly authentic documents attached to the motion for judgment on the pleadings if plaintiffs' claims are based on the documents, and matters of public record.").

### III. DISCUSSION

Foremost argues that it is entitled to judgment on the pleadings because, based on the pleadings alone, there are no remaining material issues of fact. (Doc. 38, at 5). Foremost submits that coverage is not triggered under the Foremost Policy because the Brown Amended Complaint does not allege that the accident occurred on the covered premises. (Doc. 38, at 8-15). Foremost further contends that even if the accident had occurred on the covered premises, certain exclusions in the Foremost Policy apply to preclude coverage with respect to the allegations raised against Steele in the Brown litigation. (Doc. 38, at 15). Specifically, Foremost asserts that exclusion number 20 of the Foremost Policy precludes coverage because it excludes coverage for bodily injury "resulting from any animal, which any of you are aware has a prior history of biting or attacking persons or other animals." (Doc. 38, at 15). Foremost also asserts that exclusion number 22 of the Foremost Policy precludes coverage because it excludes coverage for bodily injury "arising out of the actions of a dog that is deemed as dangerous, as defined under Pennsylvania Public Law 784, as amended." (Doc. 38, at 17). As such, Foremost avers it is entitled to an entry of judgment declaring that there is no coverage under the Foremost Policy with respect to the allegations raised against Steele in the Brown Amended Complaint, that Foremost has no duty to defend or indemnify Steele in the Brown litigation, that defense counsel for Steele assigned by Foremost be permitted to withdraw his appearance in the Brown litigation, and asks that the Court enter

additional and further relief as it deems appropriate under the circumstances. (Doc. 38, at 20-21).

Brown counters that Foremost is not entitled to judgment on the pleadings because without discovery the precise location of the incident remains unclear. (Doc. 43, at 5). Brown contends that based on the pleadings alone, it is unclear where exactly the bite occurred, where Brown's garden is situated in relation to the covered premises, or whether there are any encroachments across the property lines. (Doc. 43, at 5). Brown also counters that exclusion number 20 does not preclude coverage as it is vague and ambiguous as the Foremost Policy excludes coverage for "animal" bites but does not expressly define the term or specify the types of animals intended. (Doc. 43, at 7). Finally, Brown asserts that exclusion number 22 also does not preclude coverage because there is no reference in the amended complaint that Miami was legally declared a dangerous dog pursuant to the Pennsylvania Dangerous Dog Statute. (Doc. 43, at 7).

According to Pennsylvania law, an insurer's duty to defend or indemnify an insured in litigation is triggered by the language and factual allegations in the underlying complaint. *Kvaerner Metals Division of Kvaerner U.S., Inc. v. Commercial Union Ins*. Co., 908 A.2d 888, 896 (Pa. 2006); *see Leithbridge Co. v. Greenwich Ins. Co*., 464 F. Supp. 3d 734, 739 (E.D. Pa. 2020) ("In determining whether the underlying litigation falls within the scope of the insurer's duties to defend or indemnify, a court must examine only those factual allegations made within the "four corners" of the underlying complaint."). As such, "[t]he duty to defend commences when, comparing the factual allegations of the complaint with the terms of the policy at issue, a complaint alleges facts that potentially bring at least one claim alleged in the action within the coverage of the policy." *State Farm Fire & Cas. Co. v. Seprish*, No. 3:23-CV-1153, 2024 WL

1538439, at *1 (M.D. Pa. Mar. 11, 2024), *report and recommendation adopted*, No. 3:23-CV-01153, 2024 WL 1887061 (M.D. Pa. Apr. 30, 2024) (citing *Mutual Benefit Ins. Co. v. Haver*, 725 A.2d 743, 745 (Pa. 1999)).

While the duty to defend and the duty to indemnify both flow from a determination that the complaint triggers coverage, the duty to defend is broader than the duty to indemnify. *Ramara, Inc. v. Westfield Ins. Co.*, 814 F.3d 660, 673 (3d Cir. 2016). A liability insurer's duty to indemnify arises when the insured is found liable for damages covered by the policy and only after a court has found the insurer has a duty to defend. *QBE Ins. Corp. v. Walters*, 148 A.3d 785, 788 (Pa. Super. Ct. 2016). Therefore, if a court finds there is no duty to defend, it must necessarily hold that there is no duty to indemnify either. *Firemen's Ins. Co. of Wash. v. Tray-Pak Corp.*, 130 F. Supp. 3d 973, 979 (E.D. Pa. 2015).

To determine whether a policy provides coverage for an alleged injury the court must interpret the specific terms of the insurance policy. *Erie Ins. Exch. v. Backmeier*, 287 A.3d 931, 946 (Pa. Super. Ct. 2022). The interpretation of an insurance contract is a question of law. *Clark v. MMG Ins. Co.*, 100 A.3d 271, 275 (Pa. Super. Ct. 2014). Courts apply traditional principles of contract interpretation when determining the meaning of terms used in an insurance policy. *Evans v. Travelers Ins. Co.*, 226 A.3d 96, 100 (Pa. Super. Ct. 2019). Under Pennsylvania law, in interpreting an insurance policy, a court should read the insurance policy in its entirety to determine intent. *Clark v. MMG Ins. Co.*, 100 A.3d 271, 276 (Pa. Super Ct. 2014). "When the language of a policy is clear and unambiguous, the court is bound to give effect to the policy and cannot interpret the policy to mean anything other than 'what it says.'" *Nationwide Mut. Ins. Co. v. Cummings*, 652 A.2d 1338, 1342 (Pa. Super. Ct. 1994).

If a court finds ambiguity in insurance policy terms, such ambiguities should be resolved in favor of the insured and against the insurer because the insurer "drafted the policy and selected the language which was used therein." *Kurach v. Truck Ins. Exch.*, 235 A.3d 1106, 1116 (Pa. 2020). Policy terms are ambiguous if they "are subject to more than one reasonable interpretation when applied to a particular set of facts." *Madison Const. Co. v. Harleysville Mut. Ins. Co.*, 735 A.2d 100, 106 (Pa. 1999). However, under Pennsylvania law, "[c]lear policy language is to be given effect, and courts should not torture language to create ambiguities but should read the policy provisions to avoid it." *USX Corp. v. Liberty Mut. Ins. Co.*, 444 F.3d 192, 198 (3d Cir. 2006) (quoting *Selko v. Home Ins. Co.*, 139 F.3d 146, 152 n.3 (3d Cir. 1998).

When a claimant has a policy that provides coverage for accidents that occur on a certain premises, as the parties do here, "[i]n order to trigger coverage under the policy issued . . . there must be a claim for bodily injury caused by an accident and the bodily injury must occur at or on the designated premises." *Foremost Ins. Agency Grand Rapids, Michigan v. Himmel*, No. CV 1:09-2575, 2012 WL 13001558, at *10 (M.D. Pa. Mar. 15, 2012), *report and recommendation adopted in part, rejected in part,* No. 1:09-CV-2575, 2012 WL 13001585 (M.D. Pa. June 1, 2012). This Court has found that when "the clear and unambiguous terms of the policy do not provide for off-site injuries and [] [when] the injuries which occurred in this case occurred off-site[,]" an insurer owes no duty to defend or indemnify the insured. *Himmel*, 2012 WL 13001558, at *10 (granting summary judgment to an insurance company and finding that the insurer owes no defense or indemnity obligations to an insured when the insured's dog bit a plaintiff in an underlying suit on a neighbor's property because the bite did not occur on the insured's property, as per the insurance agreement).

8

Here, the insurance policy at issue, as attached to Foremost's complaint, extends coverage only to injury resulting from bodily injury that occurs on premises listed on the policy's Declarations page. (Doc. 1-3). In relevant part, the Foremost policy states:

> Coverage F — Premises Liability
>
> If a claim is made or a suit is brought against you for damages because of bodily injury or property damage, caused by an accident on your premises to which this coverage applies and that occurs during the Policy Period shown on the Declarations Page, we will:
>
> > 1. Pay up to the Limit of Liability shown on the Declarations Page for the compensatory damages for which you are legally liable; and
> >
> > 2. Provide a defense at our expense by attorneys of our choice.
>
> (Doc. 1, at 5; Doc. 1-3, at 22).

The Medical Payments section of the Foremost policy includes similar limitations based upon premises:

> Coverage G — Medical Payments to Others applies only to a person on your premises with your permission. Medical Payments to Others does not apply to any resident, renter, tenant, roommate, roomer, or boarder. "Premises" is defined as follows:
>
> > 1. The dwelling that is described on the Declarations Page;
> >
> > 2. The other structures including sidewalks, driveways, or other private approaches that serve that dwelling; and
> >
> > 3. The grounds where that dwelling is located
>
> (Doc. 1, at 5-6; Doc. 1-3, at 22).

Premises is defined in the Foremost policy as follows:

> 1. The dwelling that is described on the Declarations Page;
>
> 2. The other structures including sidewalks, driveways, or other private approaches that serve that dwelling; and
>
> 3. The grounds where that dwelling is located.

(Doc. 1, at 4; Doc. 1-3, at 13).

The Foremost policy explains that Premises does **not** mean:

> 1. Dwellings that are not described on the Declarations Page;
>
> 2. Other structures including sidewalks, driveways, or other private approaches, which solely serve a swelling that is not described on the Declarations Page; or
>
> 3. The grounds that are immediately adjacent to the dwellings that are not described on the Declarations Page even if located on the same parcel of land or at the same address as your dwelling described on the Declarations Page.

(Doc. 1, at 4; Doc. 1-3, at 13).

The Brown Amended Complaint filed against Steele and Price in state court alleges that on August 6, 2023, Brown was outside of her residence at 65 Barney St. in Larksville, PA when Price was outside of the property he rents from Steele located at 71 Barney St. in Larksville, PA with Miami on leash. (Doc. 1, at 7-8; Doc. 1-4, ¶¶ 7-8). Without provocation, Miami attacked Brown causing her to be injured. (Doc. 1, at 8; Doc. 1-4, ¶ 12). On the face of the complaint, the injuries took place at 65 Barney St. in Larksville, PA, which is not an insured premise, as defined by the Foremost policy. Because the actions underlying the state court complaint involve a dog bite that occurred on a property other than that dwelling listed on the Declaration Page of the Foremost policy, Steele is not entitled to defense or indemnification by Foremost. (Doc. 1, at 4-8).

Even if the injuries took place at the insured property, coverage still does not apply because Foremost Policy exclusion number 20 precludes coverage. Exclusion number 20 of the Foremost Policy excludes from coverage bodily injury "[r]esulting from any animal, which any of you are aware has a prior history of biting or attacking persons or other animals." (Doc. 1-3, at 25). The Brown Amended Complaint alleges that Miami is a

10

dangerous animal that has a history of attacking humans without provocation, and that Price and Steel knew of Miami's dangerous propensities. (Doc. 1-4, ¶¶ 13, 15, 19-21). The Brown Amended Complaint also alleges a previous incident involving Miami injuring two minor children, attaching a copy of the citation issued by the Larksville Borough Police Department. (Doc. 1-4, ¶¶ 16-17).

      The language of exclusion 20 is clear and unambiguous, excluding coverage for bodily injury resulting from any animal with a known history of biting or attacking persons or other animals. (Doc. 1-3, at 25); *See Nationwide Mut. Ins. Co. v. Cummings*, 652 A.2d 1338, 1342 (Pa. Super. Ct. 1994). Read as a whole, the contractual language could only lead a reasonable person to conclude the Foremost Policy precludes coverage for animal attacks, like Miami's attack on Brown. *See Stafford v. Scottsdale Ins. Co.,* 416 Fed.Appx. 191 (3d Cir. 2010) (unpublished) (finding denial of coverage for a dog bite was proper when the policy denies coverage for "bodily injury…caused by an animal"). A reading of Foremost Policy exclusion 20 as ambiguous because "bodily injury resulting from any animal" does not specify the type of animal intended is unreasonable. *See Madison Const. Co. v. Harleysville Mut. Ins. Co.*, 735 A.2d 100, 106 (Pa. 1999). (finding policy terms are ambiguous if the "are subject to more than one reasonable interpretation when applied to a particular set of facts"); *see also Certain Underwriters of Lloyd's London v. Chludzinski*, 2007 WL 9757781 (M.D. Pa. 2007) ("neither the evidence nor the case law supports a conclusion that the insurance policy at issue…is ambiguous because the Declarations Page references the animal exclusion…with a generic descriptor"). Because the allegations in the Brown Amended Complaint involve a dog bite from an animal with known dangerous propensities and the Foremost Policy explicitly

11

precludes coverage for bodily injury caused by such an animal, Steele is not entitled to defense or indemnification by Foremost. (Doc. 1-3, at 25; Doc. 1-4, ¶ 15).

Additionally, even if the injuries took place at the insured property, coverage would still not apply because Foremost Policy exclusion 22 also precludes coverage. Foremost Policy exclusion 22 precludes coverage for bodily injury "arising out of the actions of a dog that is deemed as dangerous, as defined under Pennsylvania Public Law 784, as amended." (Doc. 1-3, at 34). Brown alleges in her Amended Complaint that Miami is a dangerous dog as defined by the Pennsylvania Dog Law. (Doc. 1-4, ¶¶ 25-26, 38, 47-51, 55-56). Taking the allegation in the pleadings as true, Brown was injured by a dangerous dog as defined by the Pennsylvania Dog Law. *See Zimmerman v. Corbett*, 873 F.3d 414, 417-18 (3d Cir. 2017) ("In considering a motion for judgment on the pleadings, a court must accept all of the allegations in the pleadings of the party against whom the motion is addressed as true and draw all reasonable inferences in favor of the non-moving party."). Therefore, Foremost Policy exclusion 22 precludes coverage for Brown's injuries, and Steele is not entitled to defense or indemnification by Foremost.

## IV.  CONCLUSION

Given that there is no coverage under the Foremost Policy with respect to the allegations raised against Steele in the Brown Amended Complaint, Foremost has no duty to defend or indemnify Steele in the Brown litigation. The Court will **GRANT** Foremost's motion for judgment on the pleadings and enter declaratory judgment in favor of Foremost, providing that Foremost has no duty or obligation to defend or indemnify Steele under the Foremost Policy in the Brown Litigation. Defense counsel for Steele assigned by Foremost is permitted to withdraw his appearance in the Brown Litigation.

For the foregoing reasons, Defendant's motion for judgment on the pleadings is **GRANTED**. (Doc. 37). The Clerk of Court is directed to close this case.

An appropriate Order follows.

**Dated: October 31, 2025**                                     *s/ Karoline Mehalchick*
                                                                                                   **KAROLINE MEHALCHICK**
                                                                                                   **United States District Judge**